MARIA FERNANDES *v.* EYVIND RODRIGUEZ ET AL.
(SC 16198)

McDonald, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

*(One justice dissenting)*

Argued September 26—officially released December 12, 2000

*Eyvind Rodriguez*, pro se, the appellant (named defendant).

*Lois J. Lawrence*, for the appellee (plaintiff).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the Appellate Court properly determined that in an action for the partition of real property the trial court could order, as relief, the payment of money to the

named defendant, Eyvind Rodriguez,[1] by the plaintiff, Maria Fernandes, and order the defendant to execute and deliver to the plaintiff a quitclaim deed to the subject property. The defendant claimed that the trial court had no statutory authority to render such a judgment because the court was limited to ordering either a partition in kind or a sale of the property. The Appellate Court held that the trial court in this case properly could render a judgment requiring the execution of the quitclaim deed conveying the property to the plaintiff and the payment of money damages to the defendant. *Fernandes* v. *Rodriguez*, 54 Conn. App. 444, 445, 735 A.2d 871 (1999). We disagree and reverse the judgment accordingly.

The Appellate Court opinion sets forth the following pertinent facts. "The plaintiff alleged in her complaint that she and the defendant hold title to certain real estate as joint tenants and that G.E. Capital Mortgage Services, Inc., has a thirty year mortgage on the real estate in the original amount of $36,000. The plaintiff sought a partition of the real estate or '[i]f a sale would better promote the interests of the coowners, then a sale of the premises and a division of the proceeds, after the payment of the expenses of the sale, between the parties according to their respective rights in the real estate.' In his answer, the defendant admitted that there was a mortgage and agreed to the plaintiff's claims for relief, stating that 'the defendant agrees to a partition or sale of said property.' The complaint does not allege nor does the record indicate whether the defendant

---

[1] The defendants are Rodriguez, the plaintiff's joint tenant in the property in question, and G.E. Capital Mortgage Services, Inc., the mortgagee of the property. The mortgagee neither filed an appearance nor participated in the trial, was not involved in the appeal to the Appellate Court and, consequently, is not involved in this appeal. We refer in this opinion to Rodriguez as the defendant.

signed a promissory note in connection with his execution of the mortgage deed.[2]

"The defendant counterclaimed, alleging that the plaintiff was living rent free in one of the property's three apartments, and that the plaintiff kept the net rental income of the remaining two apartments. He sought a money judgment in the amount of one half of the net rental income and one half of what should have been the rental of the apartment in which the plaintiff lived.

"Certain facts are undisputed by the parties or were found by the trial court. The real estate was purchased by the parties as an investment in July, 1994, for $45,900. The parties intended to live together in one of the three apartments of the house located on the premises. The

[2] The Appellate Court majority opinion recites that "[t]he mortgage deed was not introduced as an exhibit." *Fernandes* v. *Rodriguez*, supra, 54 Conn. App. 446 n.3. The dissenting opinion by Judge Lavery, however, recites the following: "The third paragraph of the plaintiff's complaint provides in part: 'G.E. Capital Mortgage Services, Inc., has a mortgage on this real estate which mortgage is [in] the original amount of $36,000 . . . .' The mortgage deed, *which the plaintiff introduced into evidence*, discloses that the plaintiff and defendant held title to the real estate as joint tenants with the right of survivorship. The plaintiff's testimony suggests that the defendant was obligated on the mortgage." (Emphasis added.) Id., 458. A footnote supporting this statement quotes the following testimony by the plaintiff: " 'Initially my dad was going to sign for me, but he turned terminally ill and then he passed away in May. Then [the defendant] and I spoke and he said he would be willing to sign and come up with half the money.' " Id., 458 n.1 (*Lavery, J.*, dissenting). Judge Lavery continued in his dissent: "The [Housing and Urban Development (HUD)] settlement statement lists the plaintiff and defendant as borrowers and G.E. Capital Mortgage Services, Inc., as the lender, and the defendant signed the HUD statement in his capacity as a borrower. A 1996 mortgage interest statement, which the plaintiff introduced as an exhibit, also lists the plaintiff and defendant as borrowers and G.E. Capital Mortgage Services, Inc., as the lender." Id., 458–59. Our review of the record, in particular the plaintiff's exhibits eight and twenty, a monthly billing statement from G.E. Capital Mortgage Services, Inc., and the mortgage interest statement submitted to the Internal Revenue Service, strongly supports Judge Lavery's assertion that the defendant was indeed obligated on the mortgage that encumbered the property.

trial court found that the amount of the down payment plus closing costs equalled $14,892, and that the defendant's net contribution to the closing costs and down payment was $1000. The court further found that the rental value of the apartment in which the plaintiff was living was $500, that the plaintiff kept detailed records of rents and expenses from the date of purchase to the date of the trial that showed a net profit for that period of $1556, that the defendant contributed little or nothing by way of repairs or management or upkeep of the building over the years, that the plaintiff did extensive clean up and repairs and has managed the property since the purchase, and that, of the net profit of $1556, the plaintiff had paid the defendant $479. Because the trial court found that the defendant could have lived in the apartment where the plaintiff resided for a three year period, the court concluded he was not entitled to be paid anything for the rental value of that apartment. The court stated that it did not find the defendant's testimony credible and that it believed the testimony of the plaintiff.

"The trial court, after making its findings, determined that the defendant should recover $1077 as his net share of the rental proceeds, be reimbursed the $1000 he paid toward the closing costs and receive 10 percent of the equity in the property. The trial court found 10 percent of the equity to be more than a fair share for the defendant because the $1000 paid toward the closing expenses was less than 10 percent of the total down payment and the closing expenses. In determining the amount of equity, the court found the value of the property to be $61,000 and the mortgage balance to be $25,282.40.[3] The trial court concluded, on the basis of the facts found, that the defendant's interest in the real

[3] The defendant did not dispute the findings regarding the fair market value of the property or the amount of the mortgage balance. *Fernandes* v. *Rodriguez*, supra, 54 Conn. App. 447 n.6.

estate was minimal and that, therefore, the defendant was not entitled to the remedy of a sale of the property. The trial court did not discuss partition in kind as a remedy. The court's judgment was that the plaintiff pay the defendant $4605 and that the defendant execute and deliver to the plaintiff a quitclaim deed relinquishing all his right, title and interest in the property." Id., 445–47.

In his appeal to the Appellate Court, the defendant claimed that the trial court had: (1) exceeded its authority in ordering a partition by payment of money; (2) abused its discretion in accepting the opinion testimony of the plaintiff's real estate appraiser; and (3) improperly found certain material facts.

The defendant's second and third claims related to his counterclaim for one half of the rental value of the plaintiff's apartment and to his claim that his interest in the real estate was not minimal. The Appellate Court concluded that the trial court properly had relied on the testimony of a real estate appraiser called as a witness by the plaintiff in finding the fair rental value of the premises in which the plaintiff lived to be $500 per month. Id., 454. Additionally, on the basis of its review of the trial exhibits and the transcript, the Appellate Court concluded that the trial court properly had determined that the defendant's contribution to the purchase price and renovation of the premises was minimal. Id., 453. Based upon the trial court's conclusion that the defendant had no more than a minimal interest in the subject property, the Appellate Court determined that the judgment in the partition action requiring the payment of money in exchange for a conveyance of title was proper. Id.

The Appellate Court did conclude, however, that the trial court improperly had determined that the defendant was not entitled to one half of the rental value of

the apartment occupied by the plaintiff. Id., 454. That determination had been predicated on its finding that the defendant could have lived on the premises in that same apartment. In light of the fact that the plaintiff had obtained an ex parte restraining order preventing the defendant from entering the premises, coupled with evidence of police involvement with the parties at the premises, the Appellate Court concluded that the trial court's finding had been improper. Id. Accordingly, the Appellate Court reversed the judgment only as to the amount to be paid to the defendant by the plaintiff and remanded the case to the trial court for further proceedings to determine the amount, in addition to the $4605 award, due the defendant for one half of the fair rental value of the apartment occupied by the plaintiff from the time she began her residency to the date judgment ultimately is rendered. Id., 454–55.

Thereafter, the defendant petitioned this court for certification, which we granted, limited to the following issue: "In this partition action, did the Appellate Court properly conclude that the trial court had the equitable power to order the [defendant] to convey his interest in the property to the plaintiff and the plaintiff to pay the [defendant] money damages?" *Fernandes* v. *Rodriguez*, 251 Conn. 907, 739 A.2d 264 (1999).[4] We conclude that the trial court did not have such equitable power.

[4] The defendant had also sought review of the Appellate Court's decision affirming the trial court's determination that he held only a minimal interest in the property. This court declined to review that determination. Although generally, we would not revisit that issue; see Practice Book § 84-9; see also *Appleton* v. *Board of Education*, 254 Conn. 205, 213, 757 A.2d 1059 (2000) (declining to address challenge to factual finding where issue not certified for review); on remand, we invite the trial court to reexamine the question, as Judge Lavery did in his dissenting opinion. See *Fernandes* v. *Rodriguez*, supra, 54 Conn. App. 456–57. In the present case, the trial court held that the plaintiff was not entitled to the remedy of partition by sale solely because, although he was a joint tenant, his equitable interest in the property was minimal. As our subsequent discussion in the text of this opinion indicates, however, the trial court acted improperly. Moreover, our review of the evidence seriously calls into question the trial court's factual determination that the defendant's contribution was minimal if for no other reason than

The principal issue in the present case is whether, in a partition action, when terminating the ownership relationship between the parties, a court is limited to rendering a judgment of either a partition in kind or partition by sale of the real property; that is, whether there exists authority to order relief other than a partition in kind or a partition by sale pursuant to General Statutes §§ 52-495 and 52-500.[5] We conclude that in a

that the defendant's obligation on the $36,000 mortgage that encumbered the property was ignored by the trial court. See footnote 2 of this opinion. Additionally, although the plaintiff testified that she had expended $35,176 for various expenses associated with the property, she also testified that that money came from the $36,253 she had collected in rental income. Furthermore, the trial court never concluded that she personally had expended any funds for maintenance and repair. Finally, as the defendant points out in his brief, because of the additional credit for one half of the fair rental value of the apartment occupied by the plaintiff, the respective interests of the parties might well change. Consequently, as part of this court's judgment reversing the judgment of the Appellate Court, we order the Appellate Court to remand the case to the trial court to determine whether to order a partition in kind or a partition by sale, *and then* to examine the respective interests of the parties in deciding (1) how to distribute the proceeds of a sale, or (2) whether to award money damages if an order of partition in kind results in minor inequities. See 7 R. Powell, Real Property (2000) § 50.07 [3][a], [4] and [5]; see also *Filipetti* v. *Filipetti*, 2 Conn. App. 456, 459, 479 A.2d 1229, cert. denied, 194 Conn. 804, 482 A.2d 709 (1984).

[5] General Statutes § 52-495 provides: "Partition of joint and common estates. Courts having jurisdiction of actions for equitable relief may, upon the complaint of any person interested, order partition of any real property held in joint tenancy, tenancy in common, coparcenary or by tenants in tail. The court may appoint a committee to partition any such property. Any decrees partitioning entailed estates shall bind the parties and all persons who thereafter claim title to the property as heirs of their bodies."

General Statutes § 52-500 provides: "Sale of real or personal property owned by two or more persons. (a) Any court of equitable jurisdiction may, upon the complaint of any person interested, order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners.

"(b) The provisions of this section shall extend to and include land owned by two or more persons, when the whole or a part of the land is vested in any person for life with remainder to his heirs, general or special, or, on failure of the heirs, to any other person, whether the land, or any part thereof, is held in trust or otherwise. A conveyance made pursuant to a decree ordering a sale of the land shall vest the title in the purchaser thereof,

partition action, one joint tenant or tenant in common cannot dispossess another *except* by partition in kind or partition by sale. We therefore disagree with the Appellate Court's conclusion that §§ 52-495 and 52-500 authorize a trial court to order a remedy other than partition in kind or partition by sale. The text of these statutes, as well as our previous discussion of the remedies, establish that the trial court did not have the authority to order the defendant to execute a quitclaim deed to the plaintiff in exchange for the payment of money.

The right to partition is well settled and its history has been documented thoroughly. Our most recent discussion can be found in *Geib* v. *McKinney*, 224 Conn. 219, 224, 617 A.2d 1377 (1992), wherein we reiterated: "The right to partition has long been regarded as an absolute right, and the difficulty involved in partitioning property and the inconvenience to other tenants are not grounds for denying the remedy. No person can be compelled to remain the owner with another of real estate, not even if he become[s] such by his own act; every owner is entitled to the fullest enjoyment of his property, and that can come only through an ownership free from dictation by others as to the manner in which it may be exercised. Therefore the law afford[s] to every owner with another relief by way of partition . . . ." (Internal quotation marks omitted.) Through the right to partition, "it was intended that the undivided possession should be severed, and that each person having the right to be in possession of the whole property should exchange that right for one more exclusive in its nature, whereby, during the continuance of his

---

and shall bind the person entitled to the life estate and his legal heirs and any other person having a remainder interest in the lands. The court issuing the decree shall make such order in relation to the investment of the proceeds of the sale as it deems necessary for the security of all persons having any interest in such land."

estate, he should be entitled to the sole use and enjoyment of some specific [portion]." A. Freeman, Cotenancy and Partition (2d Ed. 1886) § 440, p. 582.

Our statute allowing for compulsory partition by physical division dates back to 1720; see Statutes of Connecticut (1796) p. 258; "the substance of which has survived virtually intact to the present day with only insignificant changes in the wording of the original enactment." *Penfield* v. *Jarvis*, 175 Conn. 463, 468, 399 A.2d 1280 (1978). Currently, any person holding real property as a joint tenant, tenant in common, coparcener or tenant in tail has a right to partition pursuant to § 52-495. The right to partition applies equally to both joint tenancies and joint tenancies with rights of survivorship. See General Statutes § 47-14h.

"Due to the frequent impracticality inherent in actual division, however, all states, except Maine, have, by statute, expanded the right to partition to permit a partition by sale under certain circumstances. See Restatement, 2 Property c. 11, pp. 658–61. In Connecticut, an act extending the power of our courts to order a sale in partition proceedings was enacted in 1844. Public Acts 1844, c. XIII. Prior to that time, the court had no power to order a sale of lands held in common; if the parties could not agree to a voluntary division, the only remedy was physical partition by the court upon the application of a party. The early decisions of this court dealing with the new statutory remedy of partition by sale emphasized that '[t]he statute giving the power of sale introduces . . . no new principle; it provides only for an emergency, when a division cannot be well made, in any other way. *The Earl of Clarendon* v. *Hornby*, 1 P. Wms., 446. 4 Kent's Com., 365.' *Richardson* v. *Monson*, 23 Conn. 94, 97 [1854]; *Harrison* v. *International Silver Co.*, 78 Conn. 417, 420, 62 A. 342 [1905]." *Penfield* v. *Jarvis*, supra, 175 Conn. 470–71. The presumption that partition in kind is in the best

interests of the owners is, at least in part, founded on the premise that a "sale of one's property without his consent is an extreme exercise of power warranted only in clear cases." *Ford* v. *Kirk*, 41 Conn. 9, 12 (1874); see also 59A Am. Jur. 2d, Partition §§ 189 through 191 and 193 through 195 (1987). In those cases in which the trial court concludes that a sale of the property would better promote the interests of the owners, § 52-500 authorizes the court to order such a sale. *Delfino* v. *Vealencis*, 181 Conn. 533, 536, 436 A.2d 27 (1980); see *Kaiser* v. *Second National Bank*, 123 Conn. 248, 256, 193 A. 761 (1937); *Johnson* v. *Olmsted*, 49 Conn. 509, 517 (1882). Because the statutory proceeding for sale has been deemed to be ancillary to that for partition by physical division; *Struzinski* v. *Struzinsky*, 133 Conn. 424, 426, 52 A.2d 2 (1947); we have concluded that the rules governing the right to compel physical partition likewise control the remedy of partition by sale. *Penfield* v. *Jarvis*, supra, 471.

On the basis of the history of the right to partition, and in light of the legislative treatment of that right, we have held repeatedly that in resolving partition actions, the *only* two modes of relief within the power of the court are partition by division of real estate and partition by sale. "[A] court is limited to rendering a judgment of either partition in kind or by sale of the real property; *Klaus* v. *Klaus*, 143 Conn. 218, 221, 121 A.2d 283 (1956); thus terminating the ownership relationship between the parties." *Wilcox* v. *Willard Shopping Center Associates*, 208 Conn. 318, 326, 544 A.2d 1207 (1988); see also *Geib* v. *McKinney*, supra, 224 Conn. 224–25; *Borzencki* v. *Estate of Stakum*, 195 Conn. 368, 382, 489 A.2d 341 (1985); *Delfino* v. *Vealencis*, supra, 181 Conn. 536; *Penfield* v. *Jarvis*, supra, 175 Conn. 470–71. Accordingly, remedies that fall outside the realm of partition in kind or partition by sale are not "legally permissible"; *Wilcox* v. *Willard Shopping*

*Center Associates,* supra, 324; and a "court is precluded from substituting its own ideas of what might be a wise provision in place of a clear expression of legislative will." *Penfield* v. *Jarvis,* supra, 474–75.

In affirming the trial court's order requiring the defendant to execute a quitclaim deed to the plaintiff in exchange for a payment of money, the Appellate Court relied on *Geib* v. *McKinney,* supra, 224 Conn. 227–30, for the proposition that a remedy other than partition in kind or partition by sale was authorized if either owner held less than a minimal interest in the property. Its reliance was misplaced. In *Geib,* we held that the trial court had not abused its discretion by ordering a partition by sale. Id., 229. We did not hold that even when a party held less than a minimal interest in the property, §§ 52-495 and 52-500 authorized the trial court to order a remedy other than partition in kind or partition by sale. As Judge Lavery correctly noted in his dissenting opinion in this case, "*Geib* did not contemplate a remedy other than partition in kind or partition by sale, nor did it overrule the decision in *Wilcox* or point to any amendment to §§ 52-495 and 52-500 that authorizes additional remedies." *Fernandes* v. *Rodriguez,* supra, 54 Conn. App. 456.

It is important to note that our decision in the present case is governed by statutes that have been "on the books" for a very long time, and that have been construed previously by this court in light of their history, language and apparent purpose. Although policy considerations may since have changed, and these restrictive partition provisions may be less desirable to our present society, this court is precluded from substituting its own ideas of what might be a wise provision in place of a clear expression of legislative will. *United Aircraft Corp.* v. *Fusari,* 163 Conn. 401, 415, 311 A.2d 65 (1972).

Accordingly, although the trial court is responsible for promoting the best interests of the parties, that consideration does not afford the trial court with latitude beyond the two modes of partition provided by the legislature. Once the partition has been ordered, the parties' respective interests relative to the property are an appropriate consideration in deciding how to distribute the proceeds of a sale or whether to award money damages if an order of partition in kind results in minor inequities. 7 R. Powell, Real Property (2000) § 50.07 [4][c] and [5]; see also *Filipetti* v. *Filipetti*, 2 Conn. App. 456, 458, 479 A.2d 1229, cert. denied, 194 Conn. 804, 482 A.2d 709 (1984).

Therefore, in a partition action, the trial court must first consider the practicability of physically partitioning the property in question. If the trial court determines that, based upon the situation and location of the property, the size and area of the property, the physical structure and appurtenances on the property, and other factors, a physical partition of the property would not be feasible, it may then order a partition by sale. Because a partition by sale, although a creature of statute, is an equitable action, and because it is within the trial court's discretion to order a partition by sale, once the court has exercised its equitable jurisdiction by ordering a partition by sale, it also has discretion to approve or reject the sale. See *Fidelity Trust Co.* v. *Irick*, 206 Conn. 484, 490, 538 A.2d 1027 (1988) (court of equity in foreclosure action has discretion to accept or reject proposed sale); *Jefferson* v. *Karpowicz*, 10 Conn. App. 198, 200, 522 A.2d 322 (1987) (trial court's approval of partition by sale proper where sale substantially complied with court's order and no compelling circumstance to hold otherwise existed); 47 Am. Jur. 2d, Judicial Sales § 282 (1995).

The issue of the appropriate distribution of the proceeds of any sale is thereafter to be considered. *Gaer*

*Bros., Inc.* v. *Mott,* 147 Conn. 411, 415, 161 A.2d 782 (1960) ("[o]rdinarily, in a partition by sale, the claims of the parties as to their interests in the property are considered in connection with the distribution of the proceeds"). As we have stated on other occasions, it is not always true that each tenant in common or joint tenant is entitled to equal shares in the real estate. *Levay* v. *Levay,* 137 Conn. 92, 96, 75 A.2d 400 (1950) ("Although each party was the owner of an undivided one-half interest in the property, it does not follow that he or she will necessarily be entitled to equal shares of the moneys obtained from the sale. Equities must be considered and, if established, must be liquidated before distribution is ordered."); see also *Hackett* v. *Hackett,* 42 Conn. Sup. 36, 40, 598 A.2d 1112 (1990), aff'd, 26 Conn. App. 149, 598 A.2d 1103 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992). Accordingly, should it order a partition by sale, the trial court may distribute the proceeds of the sale in accordance with the equitable interest of each party.

In conclusion, in light of the concerns expressed previously; see footnote 4 of this opinion; we order the Appellate Court to remand the case to the trial court for a new trial to reexamine the respective interests of the parties in deciding how to distribute the proceeds of a sale or whether to award money damages if an order of partition in kind results in minor inequities.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for a new trial.

In this opinion BORDEN, PALMER and VERTEFEUILLE, Js., concurred.

MCDONALD, C. J., dissenting. I would affirm the thoughtful and well reasoned opinion of the Appellate

Court. *Fernandes* v. *Rodriguez*, 54 Conn. App. 444, 735 A.2d 871 (1999).

In this case, the plaintiff and the named defendant (defendant) took property as joint tenants and intended to live there together. When their relationship soured, the plaintiff sought to partition the property, having no remedy to replace the assignment of assets available in marital dissolution actions. Considering the defendant's small investment in the property, the trial court ordered a transfer of the defendant's interest in consideration of a payment of money. The majority reverses that resolution, holding that only after a sale of the property with its attendant expenses may an equitable distribution of the proceeds be ordered.

The trial court had fashioned a commonsense, fair and equitable solution, which is what equity is supposed to do. We should uphold the trial court's discretion to do equity when faced with unusual and difficult circumstances. See *Kakalik* v. *Bernardo*, 184 Conn. 386, 395, 439 A.2d 1016 (1981).