DEAN FUSCO *v.* ROBBIN L. AUSTIN
(AC 33723)

DiPentima, C. J., and Beach and Sheldon, Js.

Argued December 12, 2012—officially released April 9, 2013

*Richard F. Paladino*, for the appellant (defendant).

*Ann Grunbeck Monaghan*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendant, Robbin L. Austin, appeals from the judgment of the trial court ordering the partition by sale of certain residential real property jointly owned by the defendant and the plaintiff, Dean Fusco. On appeal, the defendant argues that the court erred in concluding that it had no statutory authority, absent a finding of "minimal interest," to allow the defendant the opportunity to buy out the plaintiff's interest in the property. We disagree and, accordingly, affirm the judgment of the trial court.

The plaintiff commenced this action seeking a partition of certain residential real property owned by the parties as well as the return of certain personal property. The plaintiff also sought recovery for breach of contract and unjust enrichment. The defendant filed an answer, special defenses and a counterclaim alleging

breach of contract, statutory theft, breach of the covenant of good faith and fair dealing and breach of fiduciary relationship.

Following trial, the court found the following facts.[1] "The parties, who began dating in May, 1979, engaged in a long term romantic relationship but never married. On June 9, 1986, the parties purchased a single-family home located at 57 Nehantic Trail in Old Saybrook, Connecticut (hereinafter 'the property') as joint tenants with rights of survivorship. The parties purchased the property for $113,000 subject to a $98,000 mortgage held by Northeast Savings. The plaintiff contributed $11,000 at the closing while the defendant contributed $5790.48. As part of the closing on the property, the parties entered an agreement dated June 6, 1986, that involved their relative rights and responsibilities relating to the property (hereinafter 'the partnership agreement').

"The partnership agreement was handwritten by the plaintiff . . . who may have consulted the parties' closing attorney, Haiman Clein, in its preparation. The partnership agreement provides, inter alia, that if the property is sold, the defendant will receive 55 percent of the net proceeds and the plaintiff will receive 45 percent of the net proceeds, subject to either party's claim for verified costs for property improvements. The partnership agreement also provides that the parties would 'agree to rewite a new partnership agreement after 12 months from the date of closing . . . . If at that time an agreement cannot be realized between [the parties] then the property and dwelling will be placed for sale . . . .' Over the course of the next twenty-three years, the parties never rewrote the partnership

---

[1] The court separately numbered each finding of fact. For convenience, these numbers have been omitted in this opinion. The substantive findings of fact are unchanged.

agreement, nor did they list the property for sale as required by the partnership agreement. The parties refinanced the property in 1994 and [at the time of trial, there remained] less than $18,750 due on the first mortgage.

"During the course of the parties' cohabitation, the plaintiff procured several lines of credit on the property without the defendant's permission or knowledge. [At the time of trial], the only line of credit [that remained] outstanding [bore] a debt of $108,000, for which the plaintiff stipulate[d] he [was] wholly responsible. The plaintiff voluntarily vacated the property in April, 2009. He attempted to return in June, 2009, but the defendant stipulate[d] that she denied him access to the [property]. The parties are no longer involved in a romantic relationship and . . . are currently incapable of cohabiting or maintaining a functional relationship.

"During the course of the parties' cohabitation, the defendant was primarily responsible for satisfying the financial obligations involving the property while the plaintiff bore most of the responsibility for maintaining and improving the property. The plaintiff retained receipts over the course of the parties' cohabitation, which were introduced into evidence at trial, representing almost $96,000 in costs he claim[ed] he incurred related to improvements to the property. The evidence demonstrate[d] that during the period of the parties' cohabitation, their contributions . . . to the property were relatively equal. The evidence demonstrate[d] that, with the exception of the line of credit for which the plaintiff . . . stipulated he bears full responsibility, the parties operated in good faith in relation to each other and that neither party engaged in illegal or unethical behavior as it related to the property and its contents during the period of their cohabitation." The court further found the fair market value of the property to be

$378,000, on the basis of the testimony of the plaintiff's appraiser.

At trial, the defendant argued that the court should order an equitable distribution of the property rather than ordering a sale, essentially requiring the defendant to pay the plaintiff the fair market value of his interest in the property in exchange for the transfer of the plaintiff's interest in the property to the defendant.[2] The court found that this type of distribution is available only when the court finds that the party seeking partition holds a "minimal interest" in the property. Because this was not such a case, the court determined that a partition by sale was the only remedy that would suit the interests of the parties. Accordingly, the court ordered that the property be sold at auction, determined the priority of the sale proceeds and ordered that the remaining proceeds, if any, be divided equally between the parties.[3] The defendant then filed the present appeal.

[2] On appeal, the defendant indicates that she is not requesting an order of equitable distribution; rather, she indicates that she is requesting the opportunity to redeem her interest in the property, by way of paying the plaintiff the amounts ordered by the court, within the realm of the partition by sale. In support of this argument, the defendant relies, in part, on those cases noting the authority of the trial court to order a private rather than a public sale in a partition action. See *Rissolo* v. *Betts Island Oyster Farms, LLC*, 117 Conn. App. 344, 351–52, 979 A.2d 534 (2009); *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 852–53, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). In the present case, however, the defendant did not request a private sale at trial. The defendant argued, pursuant to General Statutes § 52-500, that the plaintiff had only a minimal interest in the property and, therefore, the court should order an equitable distribution of the property.

[3] In addition, the court rendered judgment in favor of the plaintiff, in part, on his claim for return of certain personal property, and in favor of the defendant on the plaintiff's remaining claims. The court also rendered judgment in favor of the plaintiff on the defendant's counterclaim. It appears, however, that the court previously had granted the plaintiff's motion for summary judgment with regard to counts two (statutory theft), three (breach of the covenant of good faith and fair dealing) and four (breach of fiduciary relationship) of the defendant's revised counterclaim. Neither party has raised this as an issue on appeal.

On appeal, the defendant argues that the court erred in concluding, as a matter of law, that it had no statutory authority, absent a finding of "minimal interest," to allow the defendant the opportunity to buy out the plaintiff's interest in the property.[4] The defendant essentially argues that General Statutes § 52-500 and *Fernandes* v. *Rodriguez*, 255 Conn. 47, 55, 761 A.2d 1283 (2000), do not preclude the court from allowing the defendant to buy out the plaintiff's interest in the property, within the realm of a partition by sale. We disagree.

We begin by setting forth our well settled standard of review regarding statutory interpretation. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to deter-

---

[4] The defendant also argues that the court erred in failing to exercise its equitable powers when, after ordering a partition by sale, it failed to further order that the defendant be allowed to refinance and buy out the plaintiff's determined interest in the property, prior to any auction and in avoidance thereof, when the plaintiff had only an economic interest in the property and the defendant wished to remain in the home. Because that claim is inextricably intertwined with the defendant's first claim, we need not separately consider this issue.

mine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citation omitted; internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 847, 937 A.2d 39 (2008).

"The right to partition has long been regarded as an absolute right, and the difficulty involved in partitioning property and the inconvenience to other tenants are not grounds for denying the remedy. No person can be compelled to remain the owner with another of real estate, not even if he become[s] such by his own act; every owner is entitled to the fullest enjoyment of his property, and that can come only through an ownership free from dictation by others as to the manner in which it may be exercised. Therefore the law afford[s] to every owner with another relief by way of partition . . . ." (Internal quotation marks omitted.) *Fernandes* v. *Rodriguez*, supra, 255 Conn. 55. "Historically, partition in kind has been the remedy of choice where owners of property do not want to be bound to each other through that ownership. Nonetheless, there [exist] circumstances in which physical partition is not feasible; therefore, [i]n Connecticut, an act extending the power of our courts to order a sale in partition proceedings was enacted in 1844." (Internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 852–53, 784 A.2d 905, certs. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

In *Fernandes* v. *Rodriguez*, supra, 255 Conn. 54, our Supreme Court considered whether, when terminating the ownership relationship between the parties in a partition action, a court is limited to rendering a judgment of partition in kind pursuant to General Statutes

§ 52-495[5] or partition by sale pursuant to § 52-500.[6] Specifically, the Supreme Court considered whether this court had properly determined that the trial court could order, as relief, the payment of money to the named defendant by the plaintiff, and an order that the defendant execute and deliver to the plaintiff a quitclaim deed to the subject property. Id., 48–49. The court concluded that "in a partition action, one joint tenant or tenant in common cannot dispossess another *except* by partition in kind or partition by sale." (Emphasis in original.) Id., 54–55. In reaching its conclusion, the court stated: "On the basis of the history of the right to partition, and in light of the legislative treatment of that right, we have held repeatedly that in resolving partition actions, the *only* two modes of relief within the power of the court are partition by division of real estate and partition by sale. [A] court is limited to rendering a judgment of either partition in kind or by sale of the real property . . . thus terminating the ownership relationship between the parties. . . . Accordingly, remedies that fall outside the realm of partition in kind or partition by sale are not legally permissible . . . and a court is precluded from substituting its own ideas of what might be a wise provision in place of a clear expression of legislative will." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 57–58.

---

[5] General Statutes § 52-495 provides: "Courts having jurisdiction of actions for equitable relief may, upon the complaint of any person interested, order partition of any real property held in joint tenancy, tenancy in common, coparcenary or by tenants in tail. The court may appoint a committee to partition any such property. Any decrees partitioning entailed estates shall bind the parties and all persons who thereafter claim title to the property as heirs of their bodies."

[6] General Statutes (Rev. to 1999) § 52-500 (a) provides: "Any court of equitable jurisdiction may, upon the complaint of any person interested, order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners."

At the time that *Fernandes* was decided, General Statutes (Rev. to 1999) § 52-500 (a) provided: "Any court of equitable jurisdiction may, upon the complaint of any person interested, order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interest of the owners." Subsequent to *Fernandes*, the legislature enacted Public Acts 2004, No. 04-93, § 1, which added the following sentence to General Statutes (Rev. to 2005) § 52-500 (a): "If the court determines that one or more of the persons owning such real or personal property have only a minimal interest in such property and a sale would not promote the interests of the owners, the court may order such equitable distribution of such property, with payment of just compensation to the owners of such minimal interest, as will better promote the interests of the owners." According to the defendant, the statute as amended does not preclude a right to buy out within the realm of a partition by sale. We conclude, however, on the basis of the clear and unambiguous language of the statute, that the court correctly held that such a remedy is available only where the court finds that the party seeking partition holds a minimal interest in the property.

As amended, § 52-500 (a) permits the court to order an equitable distribution of the property *if* it determines that one or more of the persons owning the property have only a minimal interest in the property *and* a sale would not promote the interest of the owners. Under these circumstances, the court may order the payment of just compensation to the owners of the minimal interest, as will better promote the interests of the owners. The court in the present case disagreed that the plaintiff's joint tenancy constituted a minimal interest in the property, particularly in view of the fact that he lived on the property for twenty-three years and acquired his interest at the same time the defendant

acquired her interest. In its findings of fact, the court specifically found that during the period of the parties' cohabitation, their contributions to the property were relatively equal. This finding has not been challenged on appeal. Because the statutory prerequisites necessary to ordering an equitable distribution of the property were not present in this case, the court properly concluded that this matter was controlled by *Fernandes* v. *Rodriguez*, supra, 255 Conn. 47. Although the court indicated that "some sort of equitable distribution is clearly . . . the best solution under the circumstances," the court nonetheless properly held that it was without the power to order such a solution and properly ordered a sale as the only available remedy that would suit the interests of the parties.

The judgment is affirmed.

In this opinion the other judges concurred.

